Dear Representative Lindley,
¶ 0 This office has received your letter asking for an official Opinion in which you ask, in effect, the following question:
When two or more school districts enter into a special servicecooperative program designed to meet the needs of children withdisabilities, does the resulting cooperative program become adistinct local education agency as that term is defined by theIndividuals with Disabilities in Education Act?
¶ 1 Your question requires the analysis of two areas of interrelated law: the Individuals with Disabilities in Education Act, 20 U.S.C. §§ 1400 et seq. and Oklahoma's special education cooperative program statute, 70 O.S. Supp. 1997, § 13-101[70-13-101].
 INDIVIDUALS WITH DISABILITIES EDUCATION ACT (IDEA)
¶ 2 The Individuals with Disabilities Education Act, known as the IDEA ("the Act"), is found in the United States Code at Sections 1400 et seq. of Title 20. The Act's purpose is to assure that all children with disabilities have available to them:
 [A] free appropriate public education which emphasizes special education and related services designed to meet their unique needs, to assure that the rights of children with disabilities and their parents or guardians are protected, to assist States and localities to provide for the education of all children with disabilities, and to assess and assure the effectiveness of efforts to educate children with disabilities.
20 U.S.C.A. § 1400(c)
¶ 3 The Act authorizes the states to receive federal funding in order to educate students with disabilities. In order for states to qualify for assistance in any fiscal year, a state "shall demonstrate to the Secretary that the . . . State has in effect a policy that assures all children with disabilities the right to afree appropriate public education." 20 U.S.C.A. § 1412(1) (emphasis added). We are directed by the United States Supreme Court to look to the law itself for definition. A disabled child's rights have been held to be both procedural and substantive. The Court has stated:
 [W]e think that the importance Congress attached to these procedural safeguards cannot be gainsaid. . . .
 . . . And we find nothing in the Act to suggest that merely because Congress was rather sketchy in establishing substantive requirements, as opposed to procedural requirements . . . it intended that reviewing courts should have a free hand to impose substantive standards of review which cannot be derived from the Act [IDEA] itself. In short, the statutory authorizations to grant" such relief as the court determines is appropriate" cannot be read without reference to the obligations, largely procedural in nature, which are imposed upon recipient States by Congress.
Board of Education v. Rowley, 458 U.S. 176, 205-206 (1982) (emphasis added).
¶ 4 A portion of the Act known as Part B was amended effective July 1, 1997. In general, Part B covers State educational responsibility for children with disabilities. The State educational agency, is responsible for ensuring that the requirements of the Act are met. IDEA, Pub.L. 105-17, § 612(a)(11), 111 Stat 37 (1997).
¶ 5 Your question is in regard to the situation that may arise when two or more local school districts create a cooperative program as is allowed by law. When this occurs you have asked, who is ultimately the responsible agency for the education of children with disabilities, the cooperative program or the local school?
¶ 6 As enacted by Congress, the State educational agency is now ultimately responsible for ensuring that each local school district in the state is in compliance with the requirements of the Act. In Oklahoma, the State Board of Education, with the State Department of Education designated as "lead" agency, makes assurances to the Secretary of Education, U.S. Department of Education, that Oklahoma's policies and procedures adhere to the Act. See 8 Ok. Reg. 2973 (1991); 9 Ok. Reg. 1813 (1992). The Oklahoma State Board of Education is the governing authority for control and supervision of the State Department of Education and all of the public schools of Oklahoma. Title 70 sets out in pertinent part:
 The control of the State Department of Education and the supervision of the public school system of Oklahoma shall be vested in the State Board of Education. . . .
70 O.S. Supp. 1997, § 3-104[70-3-104].
¶ 7 In Oklahoma, the State Department of Education must ensure that every child with a disability has a free appropriate public education available in order for the State to receive federal funding. 34 CFR § 300.2(b). While the State of Oklahoma has the ability to meet these needs through cooperative programs among local school districts, there can be no failure to meet the requirements of the federal law due to jurisdictional disputes among the local school districts. The Code of Federal Regulations mandates that the states apply the Act to "all politicalsubdivisions of the State that are involved in the education of children with disabilities." 34 CFR § 300.2(b).
¶ 8 The Legislature has addressed the funding problems that small local school districts may face in meeting the mandates of the Act to provide related services to children in need of special education by giving the State Board of Education statutory authority to approve cooperative programs of special education for children with disabilities as set out in 70 O.S.Supp. 1997, § 13-101[70-13-101].
 SPECIAL EDUCATION COOPERATIVE PROGRAMS
¶ 9 Title 70 provides in pertinent part as follows:
 Two or more school districts may establish cooperative programs of special education for children with disabilities when such arrangement is approved by the State Board of Education. . . .
. . . .
 It shall be the duty of each school district to provide special education and related services for all children with disabilities as herein defined who reside in that school district in accordance with [IDEA]. This duty may be satisfied by:
. . . .
 2. The district joining in a cooperative program with another district or districts to provide special education for such children[.]
70 O.S. Supp. 1997, § 13-101[70-13-101] (emphasis added)
¶ 10 As your question implies, cooperative programs, by statutory definition, result in shared special educational resources and related services, as well as students, among the participating school districts. However, the underlying responsibility for the education of each child remains with thehome school district. 70 O.S. Supp. 1997, § 13-101[70-13-101]. The statute has been followed in a policy manual published by the Oklahoma State Department of Education entitled "Policies and Procedures for Special Education in Oklahoma." The policy manual must be revised and updated in accordance with the amended Act on or before July 1, 1998, and is the special education policy guideline for all schools in Oklahoma. The policy manual represents the promulgated rules of the State Board of Education of Oklahoma as required by 34 CFR § 300.111. See 8 Ok. Reg. 2973 (1991); 9 Ok. Reg. 1813 (1992).
¶ 11 The Oklahoma Administrative Code, at OAC210:15-13-2(d)(3), describes the purpose of the policy manual as follows:
 To ensure all public and private agencies are fully and accurately informed of required policies and procedures that must be followed in providing appropriate public education opportunities to children and youth with disabilities, the SDE [State Department of Education] annually distributes copies of its primary resource document POLICIES AND PROCEDURES MANUAL FOR SPECIAL EDUCATION IN OKLAHOMA. This manual was originally conceived as an adjunct to the State Plan and has since evolved into a highly utilitarian guide for designing, implementing, monitoring and evaluating special education programs. Basically, the manual describes:
 (A) The roles and responsibilities under [IDEA] of the SDE [State Department of Education], LEAs [local school districts] and other public and private special service providers;
 (B) Policies and procedures to be followed by all parties[.]
OAC 210:15-13-2(d)(3) (1996).
¶ 12 The "Policies and Procedures For Special Education In Oklahoma" manual states in pertinent part in regard to your question as follows:
 The LEA [local educational agency (local school district)] is responsible for provision of FAPE [free appropriate public education] to all eligible children with disabilities ages 3 through 21 who are legal residents of the district. . . .
. . . .
An LEA may fulfill responsibilities for FAPE by:
 directly providing special education and related services for eligible children;
 joining in a cooperative program with another district or districts to provide special education and related services for eligible children[.]
. . . .
 Each LEA must establish and implement, through the District Plan, a goal of providing full educational opportunity to all eligible children with disabilities who are legal residents of that district.
Oklahoma State Department of Education, Policies and Procedures For Special Education In Oklahoma, 5-8 (1993) (emphasis added).
¶ 13 In 1990, Oklahoma's special education cooperative program statute and policy were reviewed by the United States Court of Appeals in the case of Johnson v. ISD-4 of Bixby, 921 F.2d 1022
(10th Cir. 1990). The Tenth Circuit directly addressed the issue of whether a special education cooperative agreement created an additional responsible party and held:
 In theory, the CDC [Children's Developmental Center] could be considered a "local educational agency" under the definitions given in the Act and in the regulations implementing the Act. However, the Act states clearly that the request for due process review is to be made to only one party, which may be designated by the state board of education. (The "due process hearing . . . shall be conducted by the State educational agency or by the local educational agency or the intermediate educational unit, as determined by . . . the State educational agency.")
(emphasis added). The Oklahoma State Board of Education has designated the local school district as the responsible party, consistent with the Act. Thus, the CDC is not a necessary party to this action.
Johnson v. ISD-4 of Bixby, 921 F.2d 1022, 1031 (10th Cir. 1990) (emphasis added).
 CONCLUSION
¶ 14 Accordingly, and in answer to your question, a special education cooperative program is not a separate and distinct entity from the local school district. Notwithstanding that 70O.S. Supp. 1997, § 13-101[70-13-101] allows local school districts to establish cooperative special education programs among school districts, it remains the primary duty of each local schooldistrict, under the supervision of the State Department of Education, to provide special education and related services for all children with disabilities who reside in that district. InJohnson the Tenth Circuit held that the Oklahoma State Board of Education's designation of the local school district as theresponsible party for providing special education and related services is consistent with the Individuals with Disabilities in Education Act. Johnson v. ISD-4 of Bixby, 921 F.2d 1022, 1031
(10th Cir. 1990).
¶ 15 It is, therefore, the official Opinion of the AttorneyGeneral that:
 A special service cooperative program is a creature ofOklahoma Statutes allowed by 70 O.S. Supp. 1997, § 13-101[70-13-101] andis created by two or more local school districts of Oklahomaentering into a cooperative agreement in order to provide specialeducation and related services as required by federal law. Theresulting educational cooperative program does not become aseparate or distinct local educational agency as that term isdefined by the Individuals with Disabilities Education Act(IDEA), 20 U.S.C. §§ 1400 et seq. The responsibility for theprovision of special education and related services for childrenwith disabilities who are served by the cooperative programremains with the local school district, under the supervision ofthe State Board of Education and the State Department ofEducation. The local school district is defined by 70 O.S.Supp. 1997, § 13-101[70-13-101] and by the policy of the State Departmentof Education of Oklahoma as that school district where eligiblechildren with disabilities, ages 3 through 21, reside and claimlegal residence.
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
JOHN M. McCORMICK ASSISTANT ATTORNEY GENERAL